UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:26-CV-171

CHRISTOPHER L. KNOWLES, )
 )
   Plaintiff, )
 )
v. )
 )
RAILINC, CORP., )
 )
   Defendant. )
 )

## COMPLAINT

1. Plaintiff, Christopher L. Knowles ("the Plaintiff" or "Knowles"), is a citizen and resident of Wake County, North Carolina. He is a Caucasian American male.

2. Defendant, Railinc Corp. ("the Defendant" or "Railinc") is a Delaware corporation and is the railroad industry's largest single source of real-time, accurate interline rail data for the North American railroad system. It has offices in Cary, North Carolina and elsewhere. It had substantially more than 15 employees at the time of the Plaintiff's termination by the Defendant on January 15, 2025.

### JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331, as this action presents federal claims under 42 U.S.C. § 2000e-2 and 42 U.S.C. § 2000e-5(f).

4. The Defendant was the Plaintiff's employer from March 2, 2015 until January 15, 2025 and employs significantly more than 15 persons for the purposes of

1

Title VII [42 U.S.C. § 2000e(b)] and the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.2.

5. The Plaintiff was the Defendant's employee (Senior Enterprise Monitoring Engineer) for purposes of 42 U.S.C. § 2000e(f).

6. The Plaintiff has exhausted all administrative prerequisites for filing an action under 42 U.S.C. § 2000e-5(f). He filed a timely charge of discrimination with the Equal Employment Opportunity Commission, Charge Number 433-2025-03512. The agency issued notice of the right to sue on December 20, 2025.

7. This Court also has jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1367 over the Plaintiff's state law claims. He is a citizen and resident of Wake County, North Carolina while the Defendant is a duly incorporated Delaware corporation. The value of the Plaintiff's claims against the foreign Defendant exceed $75,000.00. And, alternatively, the state law claims arise out of a common nucleus of operative fact.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), as the Plaintiff worked for the Defendant in Wake County, and most if not all of the challenged actions occurred in Wake County.

## FACTS

9. The Plaintiff had a successful career in monitoring engineering at MCI, Broadcom and Verizon when Railinc hired him as a Senior Enterprise Monitoring Engineer in March of 2015. The Plaintiff won several awards at each company and obtained a U.S. Patent for his work at Verizon.

10. During the course of his 10 year tenure at Railinc, he fully met all work related expectations and had no disciplinary incidents.

11. In 2024 the Plaintiff's relationship with the head or manager of the team on which he worked (the Infrastructure Services & Solutions or "IS&S" team), Ganesh Suboramanian ("Ganesh") precipitously deteriorated motivated, at least in part, by Knowles not being a part of the non-American workforce. In fact, when Ganesh assumed control of the team, he steadily transformed it into a predominantly Indian workforce, and the Plaintiff was treated to ongoing disparate discrimination, harassment and a hostile work environment based at least in part on his national origin. See 42 U.S.C. § 2000e-2(m).

12. In 2024/2025 the Plaintiff's team was comprised of some 15 individuals, 10 of which were Indian, 1 was Pakistani, 1 was Chinese and 3 were American (including Knowles).

13. In August of 2024 the Plaintiff raised a concern with Ganesh about work-related conversations being conducted in Indian languages rather than in English which hindered collaboration. Ganesh then publicly mocked the Plaintiff and humiliated him in front of all his coworkers asking sarcastically if he wanted to be moved away from the non-Americans.

14. Ganesh kept up his pattern of harassment continually yelling and screaming at the Plaintiff, in the presence of his teammates. He also commanded the Plaintiff not to speak to coworkers or respond to messages. Knowles was once forced to work 103 hours in a week. When asked how to report those hours, Knowles was

3

advised that meetings didn't count unless he was actively speaking, a clear violation of the Fair Labors Standards Act.

15. None of the Indian workers were treated the way the Plaintiff was treated by Ganesh. In point of fact, Knowles was singled out by Ganesh for exceptionally harsh treatment ostensibly because he was not part of the national culture of most of the team and rightfully complained about it.

16. On January 15, 2025, Ganesh commanded the Plaintiff to leave a meeting and accompany him to the board room where other representatives, including Human Resources, were waiting. Ganesh then proceeded to read a statement directly from his laptop to the effect that Knowles's performance was not meeting Railinc standards and his employment was terminated "effective immediately". The Plaintiff was then escorted to the front door where he was given his personal belongings.

17. When the Plaintiff asked his escort (Tanya) if she wanted his notes on the disparate treatment to which he had been subjected by Ganesh, she replied that they were moot since he was fired.

18. The Plaintiff was terminated without any prior discipline, warning, performance review or performance improvement plan. Knowles was wrongfully discharged by the Defendant motivated, in part, based on his national origin and the disparate treatment he received from a superior of a different national origin.

19. Upon his termination, the Plaintiff's position was filled by a non-American. In fact, during Knowles's tenure, all "new hires" for open positions on his team

4

were Indian. Ganesh would not even schedule interviews with any candidates from the United States.

20. All acts of Ganesh were known, condoned and ratified by the Defendant.

21. As a result of his wrongful discharge, the Plaintiff has been unemployed for over a year thereby losing substantial monetary benefits (including out of pocket expenses) and suffered the humiliation of being abruptly terminated because, at least in part, of his national origin. When he was terminated, the Plaintiff was 1 month short of the 120-month threshold for qualifying for full Tier 2 annuity benefits under the Railroad Retirement Act ("RRA").

### FIRST CLAIM FOR RELIEF
### TITLE VII

22. All prior paragraphs are incorporated herein by reference.

23. The Defendant's treatment and termination of the Plaintiff as set forth above constituted employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

24. As a white American male who was performing his duties for the Defendant in an acceptable manner the Plaintiff was a victim of reverse discrimination as explained below.

25. The Defendant placed the Plaintiff on a team that was predominantly Indian or Pakistani in national origin (11 out of 15) where collaborative interactions with coworkers were inhibited by their constant reversion to Indian languages to the exclusion of the Plaintiff. This was reported to Ganesh whose response was to ignore the Plaintiff's complaint. In short, the Plaintiff was treated in a disparate, harsh, hostile and discriminatory manner.

26. The Defendant terminated the Plaintiff under the pretext of substandard performance when, in fact, he was singled out for the disparate treatment as outlined above primarily because of his national origin.

27. Ultimately, the Defendant's treatment and termination of the Plaintiff was, **in the main**, motivated and based on his national origin and constituted impermissible discrimination under Title VII. See 42 U.S.C. § 2000e-2(m).

28. The Plaintiff seeks all compensatory damages to which he is entitled pursuant to 42 U.S.C. § 1981 as well as back pay, front pay and emotional pain and suffering. See 42 U.S.C. § 2000e-5(g)(1).

29. The Plaintiff also seeks punitive damages under 42 U.S.C. § 1981a as the Defendant's superior manager and director acted with intentional malice towards the Plaintiff and/or reckless indifference to the violation of his rights under Title VII.

30. The Plaintiff additionally seeks reasonable attorney's fees under 42 U.S.C. § 1988 and § 2000e-5(k).

**SECOND CLAIM FOR RELIEF**<br>**WRONGFUL DISCHARGE**

31. All prior paragraphs are incorporated herein by reference.

32. The Defendant's termination of the Plaintiff's employment was motivated, **in the main**, based on his national origin as an unwelcome member of a predominantly Indian team of the Defendant corporation.

33. The North Carolina General Assembly has declared in N.C.G.S. § 143-422.2, the North Carolina Equal Employment Practices Act that:

6

It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of…. national origin…. by employers which regularly employ 15 or more employees.

34. The Defendant's termination of the Plaintiff primarily on account of his national origin directly violated this express public policy of the State of North Carolina. Thus, the termination of the Plaintiff was wrongful and unlawful under state law.

35. As a result of his wrongful discharge, the Plaintiff has lost wages and benefits and potential retirement benefits under the RRA and incurred out-of-pocket expenses as well as suffered humiliation. He seeks actual and compensatory tort damages.

36. The actions heretofore described herein by high-ranking officials of Defendant were ratified and condoned by the Defendant corporation and were contrary to the public policy and the public interest of the State of North Carolina and warrant exemplary or punitive damages to the extent allowed by Chapter 1D of the General Statutes.

## JURY DEMAND

37. The Plaintiff demands that all matters be tried by and before a jury of his peers.

## PRAYER FOR RELIEF

Upon the trial of this action, the Plaintiff prays that the Court enter judgment against the Defendant and Order the Plaintiff the following relief:

a. Full equitable relief including in lieu of reinstatement full back pay and front pay, all lost benefits under the RRA, health and retirement benefits; and

b. Compensatory damages under 42 U.S.C. § 1981a(b) and the common law; and

c. Punitive damages to the extent allowed under Chapter 1D of the North Carolina General Statutes and under 42 U.S.C. § 1981a(b) and § 1988; and

d. The costs of this action including reasonable attorney's fees under 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k); and

e. Interest on judgment at the statutory rate; and

f. Any further relief the Court deems just and necessary.

Respectfully submitted this 18th day of March 2026.

**EDMISTEN & WEBB LAW**

*/s/ William Woodward Webb*
WILLIAM WOODWARD WEBB
118 St. Mary's Street
2nd Floor
Raleigh, North Carolina 27605
(919) 831-8700
woodywebb@ew-law.com

# CERTIFICATE OF SERVICE

This is to certify that the undersigned attorney has served a copy of the foregoing upon counsel and parties listed below via the CM/ECF system of the United States District Court and/or certified United States Mail properly addressed to:

Corporation Service Company
2626 Glenwood Ave
Suite 550
Raleigh NC 27608

This the 18th day of March 2026.

**EDMISTEN & WEBB LAW**

*/s/ William Woodward Webb*
WILLIAM WOODWARD WEBB
118 St. Mary's Street
2nd Floor
Raleigh, North Carolina 27605
(919) 831-8700
woodywebb@ew-law.com